Good morning. May it please the Court, my name is Christine Dahl. I represent the five detainees in this case, Mr. Dow, Mr. Khotesouvan, Mr. Lee, Mr. Savath, and Mr. Tran. It seems you have two groups. You've got the three that have been released and then you've got the two that are still in, correct? That's correct. And I'd like to inform the Court that the Immigration Service released Mr. Lee shortly after he was severely beaten by a cellmate at the county jail in which he was detained. That, of course, is extra record, but I can supply that. How does that bear on anything? I thought you were going to tell us something that had a bearing on mootness. I don't think it has mootness. I just wanted to make sure that Judge Callahan's statement that there was three out and two in didn't go uncorrected. All right. There's actually four out, one in. So if you're out, why isn't it moot? I believe that the government has not sustained its burden of demonstrating that there is no legal remedy available to the parties. If the Court leaves intact the district court's dismissal, there can be no claim for unlawful detention by the people who have been released. Well, no unlegal remedy till when? I mean, the statute has two dates in it. I'm sorry. I don't understand the question. You're saying that the government is saying there's no legal remedy ever? I mean, the statute first says the government will hold them for 90 days. And then the statute says that the government may continue to hold them for 60 days. It's our position that where there is a recognized travel document impasse, such as cases where the detainees are going to be removed at some point to Laos or Vietnam, that the mandatory detention period is unconstitutional as applied today. 90 days even. Even 90 days. Although things can change. I mean, Vietnam can change its mind. We're beginning to have relations with it. We can say tomorrow, change your mind. I believe that that echoes what the district court said here. Things can change. But that is too speculative to allow the executive branch to detain people. The statute specifically says they should stay for 90 days to give the government a chance to find out if there are any other problems. Would you admit that if this guy was a terrorist, the government could hold him? The government has not urged any special circumstances to justify detentions of these individuals. I'm asking you a question. If he were a terrorist, do you believe the government would have authority to hold him? If the government sustained its burden of proving through the Attorney General's determination process for terrorism or special circumstances, there could be detention. The Patriot Act specifically answered DeVitus's questions about expressage providing for mandatory detention. I'm having trouble hearing you. Say that again. In the U.S.A. Patriot Act. You'll have to speak louder. The microphone won't do the job for you. Talk louder. In the U.S.A. Patriot Act, which was passed in 2001, Congress provided special authority to detain indefinitely people designated by the Attorney General as terrorists. They have procedural protections that are not available to ordinary criminals facing removal. Here, the Court also authorized the government, after the 90-day removal period expired, to continue to detain people that the government has denominated as dangerous to the community. That ruling expressly conflicts with the decision of this Court in May. I beg your pardon, Your Honor. I respectfully disagree. DeVitus says that dangerousness is not a sufficient basis to detain somebody whom the government cannot repatriate. We do not place people in preventive detention without a reason.  And here, the court, the district court was made aware of this Court's decision in Thai, which rejected the government's attempt to continue to detain a Vietnamese who it could not repatriate based on allegations of mental illness making him dangerous and his criminal history. Counsel, Thai is after the 90 days. Is that correct? That's correct. And Zedvitus says that there would be a constitutional problem with indefinite confinement after the six months. Is that correct? No, Your Honor. I disagree with that reading of Zedvitus. I think what Zedvitus says is that the reasonableness of detention is measured by whether or not the purpose can be achieved and that it becomes arbitrary and punitive when the purpose cannot be achieved. Your Honor, I was drawing an inference from the fact that Zedvitus italicizes the word indefinitely and emphasizes that it's focusing on indefinite confinement and says a statute permitting indefinite detention of an alien would raise a serious constitutional problem. So you think that when they say indefinite, even though they italicize it and even though that's all the case concerns, that that's all dictum and what they're really talking about is any confinement whatsoever? I don't read it quite the same way, Your Honor. Page 690. You don't read it the same way as which? I don't think it's dictum. I think they – So are they talking only about – they're doing statutory construction, right? They don't purport to say that the statute's unconstitutional. I agree. They used the doctrine of constitutional avoidance and interpreted the statute to contain a reasonableness limitation. And the part of the statute that they construe to contain the reasonableness limitation is indefinite detention after six months. Is that correct? The Court established a presumptively reasonable period of detention of six months. And in the opinion, the purpose of that six-month detention period was to effectuate removal. And the Court recognized that not all removals could be effectuated within that six months. But at page 699, the Supreme Court instructed habeas courts to measure the reasonableness of detention by the basic purpose of the detention statute, which is to make sure the alien is available once travel documents arrive. The Court said, thus, if removal is not reasonably foreseeable, the Court should hold continued detention unreasonable and no longer authorized by statute. But what they're talking about there is after six months, correct? I don't agree, Your Honor. I think that – You don't think they're talking about the first 90 days, do you, or do you? They did not address the first 90 days. The gentleman in that case had been detained for years. And it was the post-removal detention period, 1231a6, that was construed. This case presents a question of first impression. And it is the 90-day mandatory detention period that's at issue. And I think that the principles – Now, on that 90 days, I just can't see the problem to it. It seems to me that, first of all, the low-level officers that catch the person and put them in detention and the low-level officers that hold the person in detention are unlikely to be foreign policy experts who know all the different countries' policies on accepting removals. Also, it may take a while to figure out just who this alien is. Some people lie about who they are, what their name is, where they come from, and find out if they come from a country that won't accept them. And then, whether the country won't accept them or not, as Judge Hall says, you write them a letter and find out. Maybe they wouldn't accept them yesterday, but they will today, because they want foreign aid or they've had a change of government or change of policy within the government, all kinds of reasons. So I have trouble knowing how your argument can be true. Your argument is basically there are some people, the government catches them, and it knows from the get-go that it's not going to be able to remove them to the country that they should be removed to, so it has no justification for holding them. And I don't see how it can be true factually that the government knows from the get-go that it won't be able to remove them to the correct country. It seems to me that 90 days is a reasonable time for bureaucracy to find out who the person is and whether they can remove them, and they can't know from the get-go. I agree with your recapitulation of my position, and I agree generally with the three points about is this the person we think it is, where are they from, and we need time to find out who they are. I think those factors, though, apply in situations where you have nationals from different places. For instance, the former Soviet Union. I have a lot of clients who are from ethnically Ukraine or Kazakhstan, and there is some genuine question. Did they lose their citizenship? Did they register with the embassy? And in that situation, I would not bring a challenge to the 90-day period. But here you're saying with Vietnam and Laos, they should not detain people. That's correct. In this case, every Vietnamese or Lao person. Correct. Unless the government has. You're going where no one has ever gone. Indeed. Obviously. Indeed. Boldly leading with my chin. But I believe that one day of arbitrary detention is too much. I just was talking to a Vietnamese lady the other day, and I just couldn't understand her. I had to keep asking her to repeat. I didn't know what she was saying to me. How do you know they're even Vietnamese when you catch them? It seems like it would take some time. Well, Your Honor, these people were in what you would analogize to pretrial detention before the entry of the removal order. There is no question of their identity. There is no question of their national origin. This case presents itself on a sua sponte dismissal by the district court. Each petition contains the allegation that the agency has already determined there is no likelihood of removal to either Laos or Vietnam. And consistently in the litigation that I handle in the District of Oregon, and I've The question here is should the agency be able to punish these people by keeping them 90 days when they know full well going into the removal proceedings that result in the final order that they're not going to be able to effectuate it. Now, back in 1999, the agency would come in in these kinds of cases with State Department affidavits, and they would litigate the issue of removability and the foreseeability of removal. They've stopped doing that. Post-Cividus, they have regularized their review process, and now after day 90, they review and then they determine whether to continue to detain based on dangerousness. They do not review removability when considering release. And that is the agency practice that should be eliminated by this Court. The agency says it's bound by the mandatory language in the statute. The Court should relieve them of that burden, because just as they could not keep somebody in custody 90 days if the travel document comes in day one, they need to remove them, they cannot keep them in 90 days where there is going to be no travel document and they know full well because of the expertise of the agency and the advice of the State Department that there is no likelihood of removal. There is no purpose other than punishment. Could I bring you back to mootness for a second? As I understand it, you're not arguing on the capable of repetition yet evading review branch. Is that correct? No, Your Honor, that's not correct. You are arguing that. I would assert that this comes within the mootness exception because it is a fleeting issue. And the duration of the dispute is too short for the issue to be completely litigated. Here, there is also no assurance by the government that the release won't be revoked and that these particular Petitioners won't be subjected to the same arbitrary detention over again. And in fact, the agency makes its practice quite clear that they don't even begin to review the detention of an alien they can't remove until after the expiration of the 90-day removal period. I would ask the Court to use the Sixth Circuit's decision in Rosales, which is the en banc decision addressing mootness. There, they distinguish the Picrin-Peron case from the Ninth Circuit, which is a 1991 case addressing the release on parole of a Mariel Cuban under the Cuban review plan. In that case, the agency presented a sworn affidavit obligating itself not to revoke parole unless there was new criminal conduct by the alien. Here, they have made no such assurances. They've presented nothing other than a footnote in their brief saying that they've been released on conditions. That, of course, is not true for Mr. Savath, who remains in custody. So there is at least one Petitioner to whom this is still a live controversy. I don't concede that it is not a live controversy as to the others. I think the reason for the argument, too, that as to the one that's still in custody, we're still not at 180 days either, right? That's correct. That happens in September or something like that? Yes. I believe September 14th would be 90. It'd be the 180, right? I beg your pardon. I mean, 90 plus 90. 90 plus the 90. The important thing here is that the district court set out rulings that it operates under that it's not going to consider any petitions before the expiration of the 90-day removal period. And it's going to allow the government to detain people whom it considers dangerous based solely on their criminal history. The cases, of course, are premised on the assertion that the government has already made the determination that these people won't be removed. If that is a factually erroneous premise through the litigation process, that will come to light. But opposing counsel and I are the lawyers in the district that regularly handle these matters in front of this particular judge who receives the assignments through the district court's internal management plan. And it has a chilling effect on the Petitioner's, the detainee's ability to come into court to be advised not only that the court won't hear the cases, but that it will ignore this circuit's precedent that binds the lower court and precludes reliance on dangerousness where there is no likelihood of removal. But now the language in the first 90 days is shall language, correct? It's mandatory language. And then in the next 90 days, it's may language, correct? Correct. But your position is the same for the whole 180 days, right? Yes. I think that the Cividis decision teaches that due process prohibits arbitrary detention, and that when the purpose of the detention statute, which is removal, cannot be achieved, then detention becomes arbitrary. So where they say in Cividis we must decide whether this post-removal period statute authorizes the Attorney General to detain a removable alien indefinitely italicized beyond the removal period or only for a period reasonably necessary italicized to secure the alien's removal, you don't think that's what they were deciding? No, I do think it was decided that way. I agree with that. But I don't think that what they say they're deciding is not what you say they decided. They decided. You say they decided a due process issue. They say they're deciding a statutory construction issue. You say they decided about due process during the first 90 days. They say they're deciding about holding the person indefinitely beyond the removal period. If that is what you're understanding, then we are not ‑‑ I'm not making myself clear. I'm giving you your chance to. Well, what I understood you to say, though, is that that would apply if it were a place where they would take people back. Yes. They have a different ‑‑ you know, you have one interpretation for where people, the country, will take them back. But where there is no way the country is going to take them back, then any detention is unreasonable. Now, let me go back to what I think Savaitis held. Part A of the opinion discusses principles of due process. Part B then begins by saying that we will avoid constitutional questions if we can construe the statute in a way that renders the ‑‑ avoids the constitutional issue. The case is a statutory construction case. Within it, though, it discusses principles of due process that I believe apply to a different setting. This is a different setting. Savaitis was the post‑removal period, post‑90‑day removal period setting. Those people have been in custody much, much longer. I don't believe Savaitis squarely addresses this question because it wasn't presented there. This is a different subsection of the statute, and it is a different statutory language that says shall be detained. I think if the court does not interpret that to be shall be detained unless there's no likelihood of removal, then it's unconstitutional as applied to these people. And I think that the court can ‑‑ this court can use the principles of due process articulated in Savaitis, which is not its holding, not just the narrow holding of the case, but nevertheless, you have Kansas v. Hendricks, Fuchsia v. Louisiana, all of the cases about arbitrary detention, teaching that we do not detain people without criminal process or special procedures in the situations of civil commitment, that you can take those principles and use them in this case to say that the agency cannot keep people in prison whom it cannot remove where the purpose of the detention is removal. That is taking the principles articulated in the Supreme Court into a new context, and I see that my time is up. Thank you. Thank you, counsel. Counsel? Good morning, Your Honors. I'm Ken Baumann from the District of Oregon, Assistant United States Attorney. I want to start at a narrow premise and then go back to a general premise. Judge Panner dismissed these cases because he felt he didn't have jurisdiction to hear the petition for writ of habeas corpus under 28 United States Code, Section 2241. The basic hornbook law premise of that is if you don't have the authority to grant the relief requested, you can't hear a petition. In this particular case, when the documents were filed, the petitions, the 90-day period set forth in 8 U.S.C. 1231A1 and 2 had not passed. So that is why Judge Panner dismissed the petitions in this case. Now, having dealt with the specific, I want to move back to a general. As I understand counsel's argument, we are really dealing with the legislative branch versus the judicial branch. And to follow the logic espoused by petitioner and counsel, if, in fact, from day one, an alien who was removable from the United States came from certain countries, the government would never be allowed to hold that person in detention. If you had someone from Vietnam, Yemen, any number of countries for which the United States does not have treaties to return its citizens, I would submit, if I was a lawyer, that immediately upon my client getting picked up, I would go to the agency and say, My client is from Yemen. You cannot return him to Yemen. Everybody understands that. Take judicial notice of it. Now you have to let my client out because you'll never be able to remove him. And if you're never going to be able to remove him, you can't hold him in custody. So what she is asking this Court to say to the legislature is you can't pass any kind of a statute that allows the government to keep such an alien in custody for any period of time ever. So the alien from Laos, the alien from Yemen, the alien from Vietnam, if he can get into Mexico and cross the border and get into the United States, will never be held in custody and he'll never be returned. He or she will never be returned to Vietnam, Laos, or Yemen or any number of other countries, which I would submit to you might be very attractive to some of those people. Well, will any of them ever be returned? I did not hear your first word. Well, will any of them ever be returned in the group she's talking about? Are they returning anyone or is it as a practical matter just? Outside the record, yes, they have returned some people to Laos, but that's not part of the record and should not be considered to the Court. But I just noticed Israel has a history of not returning its citizens, and anybody who is Jewish can become a citizen in Israel. I just noticed the other day that they told the Russians they would return one of the oligarch oil people if the Russians requested him. Governments change their mind. If Plo Plot was plopped down in the middle of Arizona, do you think we might be able to get enough pressure for the people from Laos to take him back? Cambodia. Cambodia, I'm sorry. So, you know, as a practical matter, yes. Most of these people, they're just run-of-the-mill people and probably will never go back. But the legislative ---- So they round them up and then they let them go? Is that ---- Well, it looks like that's what we're going to do after six months anyway based on Zabidas and some of this Court's recent decisions. So if an illegal immigrant from one of these countries makes it in, as long as he can put up with being in jail for six months, he's home free? That's what I think is going on, Judge. I mean, recently you decided that case about the, I believe it was Tay, where the person had a mental illness and you decided you had to let him out. And I guess when you get past the person having served a sentence for the criminal acts he's committed and the Zabidas opinion said you can't hold somebody in custody indefinitely for a non-criminal matter. And they characterized this as a civil matter in this aspect of a 2241, which, of course, is the Great Rift, which is some of the longest litigation we've ever had. It came over in our Constitution. You just can't hold them in custody. Well, it's not terribly socially or emotionally appealing to think that you just round people up and then you're just going to let them go and that's the whole thing. So, you know, counsel, you know, kind of tugs at your heart as she's making her argument there. Tell me why that's wrong in terms of how we should approach this case. Well, I will say it's wrong in this aspect, Judge. The separation of powers, the legislature passed a statute that said you can do a certain thing, which in this particular case, now going back to the specific, is that you can and shall actually hold an alien that meets a certain category, i.e., aggravated felons, in custody for 90 days. As Judge Kleinfelder pointed out earlier there, and you, no, excuse me, I think you did, Judge, that the 90 days said shall hold him in custody and the after 90 days said may hold him in custody. And the distinction is those are different parts of the same statute. 8 U.S.C. 1231 A.1 and 2 is the one that says you shall hold them in custody for 90 days. The question in Zavidas was 8 U.S.C. 1231 A.6. They could have just as well been different statutes. And as I read Zavidas, and I know I'm pronouncing it differently in the court, Zavidas. I have no idea. I don't either. So I'm going to stick with Zavidas because that's what I use around the office. I think Zavidas, the Supreme Court, dealt with the issue and said we need to look at this statute because the legislature passed it. Under the separation of powers and the principles that we have developed over the centuries, we need to hold this statute constitutional if at all possible. And they did so by saying, well, we've got to eliminate the word indefinite detention because even though that A.6 does not include indefinite detention, the practical effect of it is indefinite detention. So they went on to read into it a limitation, in this case six months. Implicitly in that statute, in three or four places, and again this Court in tie said that the 90-day detention was lawful. And so what we're dealing here, now going back to the very specific, is if the statute Part 8 U.S.C. 1231 A.1 and 2 is constitutional because the detention is of a limited duration, 90 days, and each of these petitions was filed before the 90 days had run, the Court could not grant the relief requested, which is release of the aliens, that's what they ask, and therefore the petitions were dismissed because the Court lacked jurisdiction. Do you know if the government has some routine when it catches people from these countries that won't take them back, sending a letter anyway saying we request that you take the person back? I don't know the answer to that as to Vietnam and Laos. I believe that's State Department. Some of these other countries, as Ms. Dahl said, we do a lot of litigation together. We just have one gentleman who was from Vietnam. His parents had moved to France. He was born in France and came to the United States, and it was a real issue whose citizenship he was, and basically everybody said, no, we don't want him back, so he's here. Could you talk a little more about mootness? Well, first of all, I argue that there was no jurisdiction. And had we allowed this issue to ripen, and I will get to your mootness thing, the 90 days would have passed. Judge Panner could have just as well disdained his decision in this matter, and I put a chart in my brief that says when the 90 days would have passed. And at that point, what he said he wanted to do was follow the CFR regs, which is 8 CFR 241.4. He wanted the agency to do the process that it does, which is get the criminal record together and make a determination whether or not the person was a danger to the community or a flight risk, not unlike the magistrates who hold bail hearings in criminal cases, and if somebody wants to appeal, the appeal is to the district court judge from a bail decision. So in this particular case, the release of the aliens, which are four now, I would have said mooted the issue, because the relief they had requested has now been granted. They're out. There was no CFR. I mean, they followed the CFR regs. It was the agency that let them out, not the judge. And so after the 90 days had passed, even though this was at the court of appeals, the agency followed its process. After the 90 days, it did a report. It went up to the agency head. The agency head evaluated the report and said, okay, three of these five guys can be released. I did not know about Mr. Lee being released until I heard it today in court. So I would say, as to those three people, the issue is moot. The statute was followed. The CFR regs were followed. The 90 days passed. They let them out. But, of course, you still have one gentleman still in custody, so you don't get off the hook for deciding this issue. But I would submit to you this is a very important issue, because the argument of the 180 days isn't up yet. And I wouldn't say it was moot, because I would say to you, if you don't want to buy off on the proposition that the court never could have heard this issue because it didn't have jurisdiction, now that the 90 days has passed, you could remand to Judge Panner and say, okay, agency needs to conduct its review as the CFR set out, and then Judge Panner, if you still object to that and they find that the alien should be held in detention, he can review that just like you'd review a bail decision and make a decision whether he agrees with the agency or not. And if he doesn't, you can appeal to this court again. So you're conceding that the fifth guy, it's not moot for him? Yes, Judge, I'm conceding that. Although, you know, lawyers are always loathe to concede anything. The next thing I know, I'll read an opinion that I conceded something very important. That's why I ask. Yeah. The department will be writing me a letter saying, what were you doing? You're not prepared to tell us whether you conceded that? You know, as a lawyer, I would say, yeah, you should concede that because you can still talk about him. But if my jurisdictional argument is correct, no, that's not correct. I mean, the cases couldn't have been filed in the first place. And Judge Panner didn't continue them. You look at the history of this case, the motions, the petitions were filed, like, early May. By the 12th, Ms. Dahl filed a motion for judgment on the pleadings, or the 11th. The judge heard them the next day. She filed her appeal before the day was over on the 12th. And technically, the judgment hadn't even been entered yet, so you could raise an argument about whether this court had jurisdiction. The judgment was entered the next day. She filed her briefs on the 4th, 14th of May. So this all happened in about a three- or four-day period of time. I think I've just about covered all my points. Just to stress that, you know, the term some people use is incrementalism. If, in fact, you decide that the legislature could never enact a statute that would allow an agency to hold somebody in custody if they were from a country for which they could never be returned, that will have implications to the pre-removal order periods of time, too. Because the next argument you'll hear was, well, as soon as they picked up my client, I went in and demonstrated conclusively that he's from Laos. They didn't find differently. Therefore, they should have let him go the day they picked him up. And if you don't have any questions, thank you very much for entertaining my argument. Thank you, counsel. I may very briefly offer three points in rebuttal. Why don't you limit it to a minute, because I think you're already over time. Yes, Your Honor. The Supreme Court's decision in Kim v. DeMoor authorizes the pretrial detention and removal proceedings. So that incrementalism argument should be rejected. We've discussed far-ranging policy questions. I want to confine you to this record, though. This case, all of these cases, presented themselves to the district court on the uncontested allegation that the agency had already determined as to these petitioners that there was no likelihood of removal. We need not address the case of an alien whose identity is in question or an alien whose detention presents special circumstances. At pages 14, 30, 47, 63, and 79, the aliens allege that as to them, at the beginning of their detention in the 90-day period, the agency had already determined that there was no likelihood of removal. Most of these men had begun their 90-day period in February or March or April. As soon as the petitions were filed, the district court scheduled a hearing before the government answered. If there is a situation where the government has a likelihood of removal out there, they'll make that argument. And they're not making it here. So even though the detention ---- I think you've used up your time. Thank you, Your Honor. Thank you, counsel. Code of Suivan v. Moroni is submitted. We're recessed until 9 a.m. tomorrow morning. All rise. This court now stands in recess.
judges: Hall, Kleinfeld, Callahan